UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES<br><br>v.<br><br>FEDERICO CANNON | No. 3:17-cr-174 |

## ORDER

On July 9, 2018, Federico Cannon pled guilty to one count of an indictment charging him with Unlawful Possession of a Firearm by a Felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). *See* Judgment, Doc. No. 94; Indictment, Doc. No. 4; Min. Entry, Doc. No. 69. At the time of arrest, Cannon was on supervised release following a prior conviction for the same charge. *See* PSR, Doc. No. 90 at ¶ 42. On December 4, 2018 I held a sentencing hearing and sentenced Cannon to a total of 84 months in prison (60 months on Count One, and 24 months on the violation of supervised release), followed by a three-year term of supervised release. *See* Judgment, Doc. No. 94. Cannon is currently incarcerated at Federal Correctional Institution Schuylkill ("Schuylkill").

On September 30, 2020, Cannon filed a motion for sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i), as amended in 2018 by the First Step Act. Cannon contends that extraordinary and compelling reasons warrant immediate release to home confinement or a halfway house. *See* Mem. of Law in Supp. Mot. for Release, Doc. No. 100 at 1. Specifically, Cannon argues that his underlying medical conditions put him at increased risk of developing severe complications were he to contract Covid-19, and that because of the way Covid-19 spreads, he is particularly

1

susceptible to infection while incarcerated. *Id.* Cannon additionally argues that release would comport with the sentencing factors outlined in 18 U.S.C. § 3553(a). *Id.*

On October 9, 2020 the government filed a memorandum in opposition to Cannon's motion for release. The government concedes that Cannon's underlying medical conditions, which put him at risk of developing severe complications were he to contract Covid-19, constitute extraordinary and compelling reasons warranting release. *See* Gov't. Opp'n., Doc. No. 103 at 1. However, the government opposes release on the basis that Cannon has a high risk of recidivism and contends that his release would pose a danger to the community. *Id.* at 5. Finally, the government argues that Cannon's health choices while incarcerated weigh against release. *Id.* at 1.

For the following reasons, I **deny** Cannon's motion for sentence reduction.

**I.      Standard of Review**

Until 2018, the statute authorizing motions for sentence reduction (or "compassionate release") vested the exclusive authority to bring a motion with the director of the Bureau of Prisons ("BOP"), based upon a showing of "extraordinary and compelling reasons" warranting relief. *See* 18 U.S.C. § 3582(c)(1)(A)(2017). The statute did not specifically define the phrase "extraordinary and compelling"; instead, under 28 U.S.C. § 994(t), the Sentencing Commission was tasked with describing "what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The Commission ultimately did so in Guideline Section 1B1.13, which provides in part that "upon motion of the Director of the Bureau of Prisons," a court may reduce a sentence under Section 3582 if "extraordinary and compelling reasons warrant the reduction" and "the defendant is not a danger to the safety…of the community." U.S.S.G. § 1B1.13(2).

Although section 1B1.13 does not specifically define the phrase "extraordinary and compelling reasons," application notes (1)(A)-(D) to that section provide in part that extraordinary and compelling reasons warranting relief may exist where a defendant is "suffering from a serious physical or medical condition." *Id.* at n.1(A)(ii)(I). Finally, application note 1(D) includes a catch-all provision providing for release where the Director of the BOP determines "there exists an extraordinary and compelling reason other than" the reasons enumerated. *Id.* Despite the broad discretion afforded to the BOP to define what constitutes extraordinary and compelling reasons for sentence reduction, the BOP has used its power to bring motions under section 3582 very sparingly. *See* U.S. Dep't of Just. Office of the Inspector General, *The Federal Bureau of Prisons' Compassionate Release Program* 1 (2013), https://www.oversight.gov/sites/default/files/oig-reports/e1306.pdf (finding that on average, only 24 incarcerated people per year were released on motion of the BOP).

In 2018, Congress moved to expand the use of motions for compassionate release by passing the First Step Act ("FSA"), which amended Section 3582 to allow defendants to file motions for release directly, following the exhaustion of "administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." *United States v. Brooker*, 976 F.3d 228, 233 (2d Cir. 2020); 18 U.S.C. § 3582(c)(1)(A)(i). However, the Sentencing Commission has failed to update section 1B1.13 since the FSA was passed, despite the fundamental change the amendment made to the statutory scheme. *Id.* As a result, the language of section 1B1.13 and the associated application notes still define "extraordinary and compelling reasons for release" only in the context of motions brought by the BOP, and not by defendants directly. *Id.* That tension between the language of section 1B1.13 and the recently enacted FSA

left unclear the standard that a district court reviewing a motion brought directly by a defendant should apply. *See United States v. Fox*, 2019 U.S. Dist. LEXIS 115388, at *4-5 (D. Me. July 11, 2019) (collecting cases). Some courts concluded that section 1B1.13's narrow definition of "extraordinary and compelling reasons" for relief remained binding even after passage of the FSA. *Id.* Others, however, concluded that a court reviewing a motion brought directly by a defendant had full discretion to determine what factors constituted "extraordinary and compelling" reasons for relief under section 3582. *Id.*

The Second Circuit addressed that division in *Brooker*, ultimately concluding that a district court considering a motion for compassionate release brought by a defendant is not bound by the definition of extraordinary and compelling reasons for reduction contained in section 1B1.13, and is instead free to "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." *Brooker,* 976 F.3d 228 at 237. "Nothing…in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion." *Id.*

The expanded discretion afforded to district courts reviewing motions brought by defendants comes amidst the global Covid-19 pandemic, during which courts in this Circuit and around the country have granted motions for compassionate release where a defendant establishes that he or she suffers from an underlying condition that increases the risk of developing severe complications from a Covid-19 infection. *See, e.g., United States v. Colvin*, 451 F. Supp. 3d 237 (D. Conn. 2020). In determining whether a particular condition increases the risk of developing complications, courts have relied on guidelines published by the Centers for Disease Control and Protection ("CDC"). *See, e.g., United States v. Rojas,* 2020 U.S. Dist. LEXIS 238647, at *2 (S.D.N.Y. Dec. 18, 2020); *United States v. Vondette*, 2020 U.S. Dist. LEXIS 237750, at *6

(E.D.N.Y. Dec. 17, 2020). Courts have additionally recognized the high risk of spread of Covid-19 in a prison environment, where inmates are forced to live in close quarters without the ability to social distance and often do not have access to hygienic products such as hand sanitizer. *See, e.g., United States v. Park,* 456 F. Supp. 3d 557, 560 (S.D.N.Y. 2020) ("the nature of prisons…puts those incarcerated inside a facility with an outbreak at heightened risk"); *see also* The Marshall Project, *1 in 5 Prisoners in the U.S. Has Had Covid-19*, https://www.themarshallproject. org/2 020/12/18/1-in-5-prisoners-in-the-u-s-has-had-covid-19 (finding that since the outbreak of the virus, "at least 275,000 [state and federal] prisoners have been infected, more than 1,700 have died and the spread of the virus behind bars shows no sign of slowing").

Despite the expanded discretion afforded to courts to determine where extraordinary and compelling reasons warrant sentence modification, however, a court reviewing a motion under section 3582 is still required to ensure that a modification would be consistent with the sentencing factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(a); *see also United States v. Madoff,* 465 F. Supp. 3d 343, 348 (S.D.N.Y. 2020). Accordingly, a court must consider the seriousness of the offense, the risk to the public from further crimes by a defendant and the need to adequately deter criminal conduct, among other factors. 18 U.S.C. § 3553(2)(A)-(D). On motion for compassionate release, a defendant bears the burden of establishing that sentence reduction is warranted. *Madoff* at *11; *see also United States v. Morales*, 2020 U.S. Dist. LEXIS 151583, at *9 (D. Conn. Aug. 20, 2020).

## II.     Background

Cannon's conviction in the case at bar was his third conviction for unlawful possession of a firearm as a convicted felon. *See* PSR, Doc. No. 90 at ¶ 122. His first conviction came after an

arrest by Connecticut Police in 2004; following eyewitness allegations that the occupants of a car had fired shots at another car, officers initiated a traffic stop of a vehicle Cannon was riding in, and recovered a firearm from the floor of the car in front of Cannon's seat. *See* PSR, Doc. No. 90 at ¶ 38. Cannon was charged with unlawful possession of a firearm by a convicted felon and sentenced to 42 months' incarceration and three years of supervised release. *Id.* While on supervised release, he was charged with assault involving domestic violence in Connecticut state court. *Id.* at ¶¶ 39-40. His term of supervised release expired unsuccessfully while he was in state custody on January 22, 2012. *Id.* at ¶ 38. He was subsequently arrested on a second charge of unlawful possession of a firearm by a convicted felon in 2012, after officers executed a traffic stop of a car in which Cannon was riding and recovered a loaded firearm from the floor of the car. *Id.* at ¶ 42. Cannon was convicted in 2013 following a jury trial, and was sentenced to 70 months' incarceration and three years of supervised release. *Id.* at ¶ 42. He was released from custody to a halfway house on January 3, 2017, and from the halfway house on June 26, 2017. *Id.*

On July 31, 2017, about month into his three-year term of supervised release, Bridgeport police were informed that Cannon had a firearm and was driving in a black Acura in the Trumbull Gardens Area of Bridgeport. *See* Gov't. Opp'n., Doc. No. 103 at 3. Police stopped the Acura after witnessing a traffic infraction and recovered a handgun from the floor of the car in front of Cannon's seat. *Id.* Cannon was arrested and charged with unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g) and 924(a)(2).

Cannon, who is now 38, has spent over half his life incarcerated. *See* Mem. of Law in Supp. Mot. for Release, Doc. No. 100 at 10. In his presentence interview in advance of sentencing in the case at bar, Cannon described a difficult childhood, explaining that he had been

raised by his grandparents, and that he had little to no contact with his father throughout his life. *See* PSR, Doc. No. 90 at ¶ 52. He suffered violent physical abuse at the hands of his grandfather, and was hospitalized for injuries inflicted by his grandfather on at least one occasion. *Id.* at ¶ 65. By the age of 11, he had become involved with a gang in his neighborhood. *Id.* at ¶ 57. Cannon suffers from PTSD, depression and impulse control disorder. *See* Mem. in Supp. of Mot. for Sentence Reduction (Doc. No. 100) at 1.

### III.    Discussion

#### A.   Exhaustion

Under the FSA, a defendant may bring a motion for compassionate release only after exhausting all administrative rights to appeal a failure of the BOP to bring such a motion, or after the lapse of 30 days from the filing of such a motion with the warden of the defendant's facility. 18 U.S.C. § 3582(c)(1)(A)(i); *United States v. Sturgis*, 2020 U.S. Dist. LEXIS 219102, at *9 (W.D.N.Y. Nov. 23, 2020).

Cannon submits as an exhibit to his motion for compassionate release a letter from the warden of Schuylkill denying his motion. *See* Exhibit B (Doc. No. 100-1). Although the record is not clear with regard to whether Cannon has fully exhausted his administrative rights to appeal, the government concedes that the exhaustion requirement has been met and has therefore waived any potential objection. *See* Gov't. Opp'n., Doc. No. 103 at 1; *see also United States v. Leigh-James*, 2020 U.S. Dist. LEXIS 124546, at *17 (D. Conn. July 15, 2020) (exhaustion requirement is "non-jurisdictional" and therefore subject to waiver).

#### B.   Extraordinary and Compelling Reasons

Cannon contends that his underlying medical conditions, including hypertension, obesity and mental health issues put him at risk of developing severe complications were he to contract

7

Covid-19. Specifically, he notes that obesity has been found to be the one of the most common chronic conditions present in patients hospitalized due to Covid-19. *See* Christopher M. Petrilli, *et al.*, *Factors Associated with Hospitalization and Critical Illness Among 4,103 Patients with COVID-1 Disease in New York City* (Apr. 11, 2020), https://ww w.medrxiv.org/content/10.1101/2020.04.08.20057794v1.full.pdf.

Cannon additionally notes that numerous courts have recognized that hypertension and obesity increase the risk of developing severe complications due to Covid-19 and have granted motions for compassionate release on those grounds. *See, e.g., United States v. Williams*, 456 F. Supp. 3d 414, 419 (D. Conn. 2020) (diagnosis of hypertension and other health conditions that placed defendant at greater risk of complications due to Covid-19 constituted extraordinary and compelling circumstances); *United States v. Handy*, 2020 U.S. Dist. LEXIS 84986, at *4 (D. Conn. May 14, 2020) (granting release in part due to underlying conditions of hypertension and obesity).

Cannon argues that the very nature of prisons, where inmates are kept in population-dense housing with inadequate access to showers, limited space for social distancing and limited access to adequate medical treatment, increases the risk of Covid-19 transmission. *See* Mem. in Supp. of Mot. for Sentence Reduction (Doc. No. 100) at 6. He cites an expert report indicating that "the risk posed by infectious diseases in jails and prisons is significantly higher than in the community, both in terms of risk of transmission, exposure, and harm to individuals who become infected." *See* Exhibit C, Doc. No. 100-2 (Declaration of Dr. Jaimie Meyer) at ¶ 7. He additionally notes that although the BOP is reporting the number of inmates at each facility that have contracted Covid-19, those numbers may be inaccurate because the BOP has made no effort to comprehensively test inmates who are not actively experiencing symptoms. *See* Mem. in

Supp. of Mot. for Sentence Reduction (Doc. No. 100) at 7. Because of the nature of Covid-19 and the high rates of asymptomatic infection, testing only inmates who are actively symptomatic does not accurately capture the rate of infection in a particular facility. *Id.* Without accurate data about the number of inmates who have been infected, the spread of the virus cannot be properly controlled. *Id.*

The government concedes that Cannon's underlying medical condition of obesity constitutes an extraordinary and compelling reason as defined by section 3582.[1] *See* Gov't. Opp'n., Doc. No. 103 at 1. However, the government contends that Cannon's choices while incarcerated—failing to lose weight and choosing not to receive an influenza and pneumonia vaccine—weigh against release. *Id*. at 6.

Based on Cannon's underlying medical conditions, I find that he has established that extraordinary and compelling reasons support a sentence reduction. He indicates that he suffers from multiple medical conditions, including obesity and hypertension, that the CDC has specifically identified as increasing the risk of developing severe complications due to a Covid-19 infection. *See* CENTERS FOR DISEASE CONTROL AND PREVENTION, *People with Certain Medical Conditions,* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (listing obesity as a risk factor for developing severe complications due to Covid-19 and hypertension as a possible risk factor). Courts in this Circuit have held that both conditions, combined with the risk of contracting Covid-19 while incarcerated, constitute extraordinary and compelling reasons warranting sentence modification. *See, e.g., United States v. De La Cruz,* 2020 U.S. Dist. LEXIS 195944, at *12 (D. Conn. Oct. 22,

---

[1] The government contends that Cannon's blood pressure readings in his medical records do not meet the CDC's definition of hypertension. However, those same medical records state that he has been diagnosed with hypertension. Accordingly, I assume for purposes of this order that Cannon has been diagnosed with hypertension. *See* Exhibit A, Doc. No. 102 at 1.

2020) (extraordinary and compelling reasons warranting relief established where defendant suffered from hypertension and obesity); *United States v. Pena*, 459 F. Supp. 3d 544, 550 (S.D.N.Y. May 8, 2020) ("[t]his Court has repeatedly recognized that COVID-19 presents a heightened risk for individuals with hypertension").

It is also clear that the communal nature of the prison environment dramatically increases the risk of transmission of Covid-19. *See* CENTERS FOR DISEASE CONTROL AND PREVENTION, *FAQs for correctional and Detention Facilities*, https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/faq.html ("people incarcerated in correctional and detention facilities are at greater risk for…COVID-19, because of close living arrangements"); *Pena*, 459 F. Supp. 3d 544 at 551 ("the Covid-19 pandemic presents an extraordinary and unprecedented threat to incarcerated individuals"). Finally, despite testing and preventative measures, Schuylkill is currently reporting 52 confirmed cases of Covid-19 among inmates. *See* FEDERAL BUREAU OF PRISONS, COVID-19 Cases, https://www.bop.gov /coronavirus/ (last visited January 19, 2020). That number is concerning in and of itself, but as the BOP itself has noted, those numbers "d[o] not necessarily account for unconfirmed (non-tested) cases" and may therefore be an underestimate. *See Pavlo, W.,* Bureau of Prisons Underreporting COVID-19 Outbreaks in Prison," FORBES (Apr. 1, 2020), https://www.forbes.com/sites/walterpavlo/2020/04/01/bureau-of-prisons-underreporting-outbreaks-in-prison/?sh=552ba80e7ba3.

The government's argument that Cannon's "health choices" demonstrate that he should not be granted relief is unavailing. The government provides no evidence that Cannon has available the meaningful opportunity to exercise, or the ability to make choices regarding his diet while incarcerated. *See* Gov't Opp'n., Doc. No. 103 at 6. The government additionally points to

10

no facts indicating that doing so would reduce Cannon's hypertension. *See United States v. Shivers,* 2020 U.S. Dist. LEXIS 232797, at *12 (S.D. Ind. Dec. 11, 2020) ("[t]he Court will not discount Mr. Shivers' health risks just because he has not consistently made healthy eating choices, especially given the current outbreak of COVID-19").

The argument that Cannon's choice not to receive other vaccinations indicates he is not concerned about the risk of Covid-19 is similarly unpersuasive, because the government offers no evidence that receiving other vaccinations would reduce Cannon's risk of contracting Covid-19. *See* Gov't. Opp'n., Doc. No. 103 at 6.

Accordingly, Cannon has established that his underlying medical conditions, coupled with the risk of contracting Covid-19 while incarcerated at Schuylkill, constitute extraordinary and compelling reasons supporting sentence modification.

### B. Section 3553(a) Factors

Even where a defendant establishes that extraordinary and compelling reasons support sentence reduction, a court reviewing a motion under section 3582(a) must additionally consider the sentencing factors set forth in section 3553(a). 18 U.S.C. § 3582. Accordingly, a court must examine "the nature and circumstances of the crime, the defendant's history and characteristics, and the multiple purposes of sentencing, such as providing just punishment, deterring crime, protecting the public from further crimes by the defendant, and providing the defendant with rehabilitation." *United States v. Miller*, 2020 U.S. Dist. LEXIS 217614, at *5 (D. Conn. Nov. 20, 2020); *see also* 18 U.S.C. § 3553(a). Although a court considering a motion by a defendant is no longer required to consider whether a defendant would pose a "danger to the community" as described by section 1B1.13, a court is still required by section 3553(a) to "consider…the need to protect the public from further crimes of the defendant." *United States v. Vargas*, 2020 U.S.

Dist. LEXIS 220531, at *26 (S.D.N.Y. Nov. 24, 2020). Accordingly, a court is required to weigh both a defendant's "recidivism risk and potential threat to the community at large." *Id.*

At the time of Cannon's sentencing, I considered the section 3553(a) factors, focusing on the fact that Cannon had been rearrested just over a month into his term of supervised release. *See* Tr. of Sentencing Hr'g, (Doc. No. 99) at 44. I noted that I was concerned about deterrence and recidivism, given Cannon's previous convictions for the same charge. *Id.* Accordingly, I sentenced Cannon to a slightly longer sentence than he had served on his previous conviction, imposing a total sentence of 84 months (60 months on the underlying charge, and 24 months for the violation of supervised release). *Id.* Those same considerations play a role in determining whether to grant Cannon's motion for release.

With regard to recidivism, I note that Cannon indicates that he has worked to build his relationships with his wife and children. *See* Mem. in Supp. of Mot. for Release, Doc. No. 100 at 10; Letter, Doc. No 106-2 at 1. He has additionally been discipline-free while incarcerated on this charge. *See* Gov't. Opp'n., Doc. No 103 at 5; Letter, Doc. No. 106-2 at 1. He has also submitted detailed letters with his motion, describing his plans to reunite with his family and find steady employment when released. *See* Letter, Doc. No. 106-2 at 1. Finally, Cannon has submitted a detailed record of the extensive coursework and vocational training he has completed while incarcerated. *See* Education Data, Doc. No. 106-3.

However, as I noted during his sentencing hearing, this is his third conviction for unlawful possession of a firearm, and this arrest came just over a month into a previously imposed term of supervised release. *See* Sentencing Tr., Doc. No. 99 at 44. Although Cannon's progress toward rehabilitation while incarcerated is admirable, I cannot conclude that there is not a risk of recidivism. *See United States v. Gonzalez,* 2020 U.S. Dist. LEXIS 178525, at *14 (D.

Conn. Sep. 29, 2020) (denying release in part because of "consistently short period between his prior releases and renewed criminal behavior"); *United States v. Moore*, 2020 U.S. Dist. LEXIS 110293, at *5 (S.D.N.Y. June 23, 2020) (denying release due in part to history of serious crime and "committing crimes while [the defendant] was on parole" which suggested risk of recidivism).

Additionally, to date, Cannon has served approximately half of the sentence I originally imposed. A sentence reduction at this point would therefore not comport with affording "adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(B); *see also United States v. Francisco*, 2020 U.S. Dist. LEXIS 117104, at *8 (S.D.N.Y. June 29, 2020) (denying release where defendant had served only 60% of sentence); *United States v. Harris*, 2020 U.S. Dist. LEXIS 179257, at *11 (S.D.N.Y. Sept. 29, 2020) (denying motion for compassionate release where defendant had served just under half of sentence and noting that release of defendant "this early in his this early in his term of imprisonment would disserve the interests embodied in the Court's original sentencing determination").

Finally, Cannon's extensive criminal history—namely, three separate convictions for the same crime—weighs heavily against release. Some of his previous convictions involved violent conduct, including state charges for domestic violence. *See* Gov't. Opp'n., Doc. No 103 at 5. I note additionally that Cannon was arrested with a loaded firearm in this case, a factor I have previously considered when denying release in similar cases. *See United States v. Leigh-James,* 2020 U.S. Dist. LEXIS 124546, at *23 (D. Conn. July 15, 2020) (denying release in part because defendant was arrested with "two fully loaded firearms" and therefore posed a danger to the community); *see also United States v. Belle*, 457 F. Supp. 3d 134, 141 (D. Conn. 2020) ("in light

13

of [defendant's] history of violent behavior and possession of firearms…[the defendant] has not shown he would not be a danger to any other person or the community").

Although Cannon has demonstrated that extraordinary and compelling reasons for relief are present based on his underlying medical conditions and the current Covid-19 pandemic, I am constrained by the requirement that I consider the factors set forth in section 3553(a) before granting a motion for sentence reduction. Despite the fact that Cannon has demonstrated clear progress toward rehabilitation, I cannot conclude that Cannon has a low risk of recidivism or that release at this time would comport with promoting deterrence and protecting the public from possible further crimes by a defendant. Accordingly, based on my consideration of the section 3553(a) factors, I find that a sentence reduction at this time is not warranted.

### IV.   Conclusion

For the foregoing reasons, Cannon's motion for release is **denied.**


So ordered.

Dated at Bridgeport, Connecticut, this 22nd day of January 2020.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge