## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES | |
| v. | No. 3:17-cr-174 (SRU) |
| FEDERICO CANNON | |

## <u>ORDER</u>

Federico Cannon ("Cannon"), currently incarcerated at Federal Correctional Institution Schuylkill, has filed a second motion for sentence modification pursuant to 18 U.S.C. § 3582. Cannon contends that a confluence of factors, including his health, the Covid-19 pandemic, his family circumstances, and the length of time he has already served in prison, constitute extraordinary and compelling reasons for relief. The government opposes sentence modification, principally arguing that Cannon has failed to demonstrate that extraordinary and compelling circumstances exist and that he poses a significant risk of recidivism.

For the reasons that follow, Cannon's motion is **granted.**

## I.     Background

In July 2018, Cannon appeared before me and pled guilty to a one-count indictment charging him with Unlawful Possession of a Firearm by a Felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2)). *See* Min. Entry, Doc. No. 69. At the time Cannon entered his plea, he was serving a term of supervised release imposed in a separate matter (*United States v. Cannon*, 12-cr-122, a case in which Cannon was also indicted for a violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and ultimately found guilty by a jury). *See* Judgment, Doc. No. 94; Indictment, Doc. No. 9, 12-cr-122; Jury Verdict, Doc. No. 132, 12-cr-122. In December 2018, I sentenced Cannon to serve sixty months' incarceration for the firearm conviction, followed by twenty-four

months' incarceration for violating the terms of supervised release by committing a new federal

offense, for a total effective sentence of 84 months' incarceration. *See* Judgment, Doc. No. 94. I

additionally imposed a three-year term of supervised release to follow that term of incarceration.

*See id.*

In September 2020, Cannon filed a motion for release, which I denied in January 2021.

*See* Doc. No. 100, Doc. No. 107. Although I agreed with Cannon that extraordinary and

compelling reasons for sentence modification were present, I ultimately determined that the

factors set forth in 18 U.S.C. § 3553 weighed against release. *See* Doc. No. 107. In March 2022,

Cannon, proceeding *pro se*, filed a second motion for release. *See* Doc. No. 109. In June 2022,

counsel filed a supplemental brief on Cannon's behalf. *See* Doc. No. 111. The government filed

a brief in opposition on July 13, 2022. *See* Doc. No. 113.

## II.      Standard of Review

Until 2018, the Director of Bureau of Prisons ("BOP") retained the exclusive authority to

bring a motion for sentence reduction (or "compassionate release") under section 3582. *See* 18

U.S.C. § 3582(c)(1)(A) (2017). On motion of the Director, a district court could "reduce [a

defendant's] term of imprisonment" if the court found that "extraordinary and compelling

reasons warrant[ed] such a reduction." *Id.* The statute itself did not define the phrase

"extraordinary and compelling reasons"; instead, pursuant to 28 U.S.C. § 994(t), the Sentencing

Commission was tasked with promulgating a definition, including "the criteria to be applied and

a list of specific examples."

The Commission ultimately did so in Guideline Section 1B1.13. That section provides, in

relevant part, "upon motion of the Director of the Bureau of Prisons," a court may reduce a

sentence under Section 3582 if "extraordinary and compelling reasons warrant the reduction"

and "the defendant is not a danger to the safety . . . of the community." U.S.S.G. § 1B1.13(2). The application notes accompanying that section enumerate the circumstances that meet the definition of "extraordinary and compelling," including:

> (A) Medical Condition of the Defendant.
>> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>> (ii) The defendant is—
>>> (I) suffering from a serious physical or medical condition,
>>> (II) suffering from a serious functional or cognitive impairment, or
>>> (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>>> …
> (C) Family Circumstances.
>> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

*Id.* at n.1. Finally, in application note 1(D), the Commission included a catch-all provision, permitting a court to grant a motion under section 3582 if, "[a]s determined by the Director of the Bureau of Prisons, there exists. . . an extraordinary and compelling reason" other than those specifically provided.

Despite the broad discretion it enjoyed under that statutory scheme, the BOP exercised its power to file motions for sentence modification very "sparingly." *United States v. Brooker*, 976 F.3d 228, 231 (2d Cir. 2020) (noting that on, average, only 24 incarcerated people per year were released on BOP motion). In 2018, with the goal of expanding the scope of compassionate release, Congress passed the First Step Act ("FSA"), amending section 3582 to authorize a defendant to file a motion for release directly with a district court. 18 U.S.C. § 3582(c)(1)(A)

(2018). Before filing such a motion, however, a defendant must "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion" or demonstrate that more than thirty days have lapsed since requesting that the BOP file a motion on the defendant's behalf. 18 U.S.C. § 3582(c)(1)(A).

Although the FSA fundamentally altered the procedural mechanism for sentence modifications, section 1B1.13 and the associated application notes still define the criteria for release solely in the context of motions filed by "the Director of the Bureau of Prisons," leaving unclear the standards applicable to motions filed directly by defendants. U.S.S.G. § 1B1.13; *see also Brooker,* 976 F.3d at 233–34. As a result, following passage of the FSA, some courts concluded that the criteria set forth in section 1B1.13 governed motions filed by defendants directly. Others reasoned that courts considering motions filed by defendants had discretion to determine which factors met the requirements for sentence modification. *See, e.g., United States v. Fox*, 2019 U.S. Dist. LEXIS 115388, at *4-5 (D. Me. July 11, 2019) (discussing the split).

The Second Circuit addressed the issue directly in *Brooker*, ultimately concluding that a district court reviewing a motion brought by a defendant is free to "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." *Brooker,* 976 F.3d 228 at 237. More specifically, "[n]either Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion." *Id.*

That expanded discretion to determine whether a defendant meets the criteria for sentence modification came amidst the Covid-19 pandemic, during which district courts around the country have granted compassionate release to defendants with underlying conditions that increase their risk of becoming seriously ill from a Covid-19 infection. *See, e.g., United States v.*

4

*Jones,* 2020 U.S. Dist. LEXIS 193046, at *7-8 (S.D.N.Y. Oct. 19, 2020); *United States v. Colvin*, 451 F. Supp. 3d 237, 241 (D. Conn. 2020); *United States v. Robinson*, 2022 U.S. Dist. LEXIS 29803, at *7 (S.D.N.Y. Feb. 18, 2022) ("In a number of cases involving defendants with significantly heightened vulnerability to COVID-19 and who had generally served the substantial majority of their sentences, this Court has granted early release pursuant to § 3582(c). The Court and others in this District have found compelling the arguments for ordering the expedited release of inmates at high risk from Covid.").

Although some courts have concluded that the availability of the Covid-19 vaccine mitigates the risk posed by the virus such that underlying conditions no longer weigh in favor of release, others have not. *Compare United States v. Diaz,* 2021 U.S. Dist. LEXIS 96158, at *1 (S.D.N.Y. May 20, 2021) (finding defendant's vaccination status dispositive in determining whether risks posed by virus constituted extraordinary and compelling circumstances) *with United States v. Brunetti,* 2022 U.S. Dist. LEXIS 4604, at *12 (S.D.N.Y. Jan. 10, 2022) ("The Court disagrees with the Government's assertion that [defendant's] vaccination status, considered in isolation, substantially weakens his claim that his medical conditions constitute extraordinary and compelling reasons warranting his release.") (cleaned up); *see also United States v. Oruche*, 2022 U.S. Dist. LEXIS 18257, at *6-7 (S.D.N.Y. Feb. 1, 2022); *United States v. Rivera*, 2022 U.S. Dist. LEXIS 99745, at *4-5 (S.D.N.Y. June 3, 2022). Significantly, many of the courts that have granted release to individuals with underlying medical conditions have recognized the near impossibility of controlling the spread of Covid-19 in the congregate environment of a federal prison or penitentiary. *See, e.g., United States v. Johnson*, 2021 U.S. Dist. LEXIS 231925, at *11-12 (E.D.N.Y. Dec. 3, 2021); *United States v. Park,* 456 F. Supp. 3d 557, 560 (S.D.N.Y. 2020); *see also COVID-19 and the Correctional Environment: The*

*American Prison as a Focal Point for Public Health,* Am J. Prev Med. 2020 Jun; 58(6):888-891. doi: 10.1016/j.amepre.2020.04.001. Epub 2020 Apr 17. PMID: 32387174; PMCID: PMC7164863.

Although district courts in this Circuit have fairly broad discretion in determining when extraordinary and compelling circumstances are present, a court is still required to ensure that sentence modification comports with the sentencing factors identified in section 3553(a). 18 U.S.C. § 3582(c)(1)(a); *see also United States v. Madoff*, 465 F. Supp. 3d 343, 348 (S.D.N.Y. 2020); *United States v. Mata*, 2022 U.S. Dist. LEXIS 19170, at *3 (S.D.N.Y. Feb. 2, 2022). Those factors include: the nature and circumstances of the offense; the defendant's history and characteristics; the risk of recidivism and the risk release might pose to public safety; the seriousness of the offense; the need to provide just punishment and promote respect for the law; the need to adequately deter criminal conduct; and the need to provide the defendant with "educational or vocational training, medical care, or other correctional treatment." 18 U.S.C. § 3553(a)(2)(A)–(D). "The weight to be afforded any § 3553(a) factor is a matter firmly committed to the discretion of the sentencing judge." *United States v. Keitt*, 21 F. 4th 67, 72 (2d Cir. 2021) (cleaned up). On motion for compassionate release, a defendant bears the burden of establishing that sentence reduction is warranted. *Madoff*, 465 F. Supp. 3d at 349; *see also United States v. Morales*, 2020 U.S. Dist. LEXIS 151583, at *5 (D. Conn. Aug. 20, 2020).

## III.   Discussion

Since January 2021, when I denied Cannon's prior motion on the basis that the factors set forth in section 3553(a) did not weigh in favor of release, two significant things have changed. First, as the government points out, Cannon is now fully vaccinated against the Covid-19 virus. Govt.'s Mem., Doc. No. 113 at 1. Second, Cannon has now served the majority of the term of

incarceration I originally imposed. As a result, the analysis of whether sentence modification is appropriate looks very different today than it did in January of 2021.[1]

Turning first to whether extraordinary and compelling reasons are present, the government is certainly correct that Cannon's vaccination status significantly reduces his chances of becoming severely ill if he were to contract the Covid-19 virus while incarcerated. Nevertheless, Cannon suffers from obesity and is prediabetic, conditions that may increase his risk of developing complications from Covid-19 were he to suffer a breakthrough infection. *See* Def.'s Mem. Doc. No. 111, at 1; *see also* Ex. A, Doc. No. 113; Centers for Disease Control, "People with Certain Medical Conditions," https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated May 2, 2022) (recognizing obesity – but not prediabetes – as a condition increasing the risk of severe illness from a Covid-19 infection)[2]; Heidarpour M, Abhari AP, Sadeghpour N, Shafie D, Sarokhani D., Prediabetes and COVID-19 severity, an underestimated risk factor: A systematic review and meta-analysis. 10.1016/j.dsx.2021.102307. Epub 2021 Oct 9, https://pubmed.ncbi.nlm.nih.gov/34731820/. Furthermore, although Cannon's medical records indicate that he has already contracted the virus once, *see* Doc. No. 113, that does not demonstrate that he is not at risk of reinfection. *See, e.g.,* Centers for Disease Control, "Reinfection," https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/clinical-considerations-reinfection.html. Particularly in light of the rapid spread of new variants, and the inherent difficulty of controlling the spread of Covid-19 vaccine

---

[1] It appears that Cannon properly exhausted administrative remedies prior to filing the instant motion; he attaches to his *pro se* memorandum a copy of a request for compassionate release submitted to the Warden of FCI Schuylkill in January 2022, which was denied. *See* Doc. No. 109-1. In any event, the government does not raise exhaustion, and the requirement is therefore waived. *See, e.g., United States v. Smith*, 2021 U.S. Dist. LEXIS 24936, at *3 (S.D.N.Y. Feb. 8, 2021).

[2] I note that the CDC recognizes a diagnosis of diabetes – but not prediabetes – as a risk factor for becoming severely ill with Covid-19. Although some studies suggest that it is a risk factor, that diagnosis alone would likely not meet the definition of extraordinary and compelling reasons for release; instead, it is simply another factor weighing in favor of release.

in the congregate environment of a federal prison, Cannon's medical conditions therefore weigh in favor of release. *See, e.g., United States v. Suggs*, 2021 U.S. Dist. LEXIS 120221, at *14 (D. Conn. June 28, 2021).

Moreover, I agree with Cannon that the fact that his wife is the sole caretaker for his young stepson does not, in and of itself, warrant sentence modification. But nor are Cannon's family circumstances irrelevant – the role that Cannon could play in assisting with childcare weighs in favor of release, particularly where his wife suffers from conditions that put her at risk of severe illness were she to contract Covid-19.

Turning next to the section 3553(a) factors, the most significant shift since I denied Cannon's prior motion for release is the additional time Cannon has now served in prison. More specifically, Cannon has completed the bulk of his term of imprisonment, and will be eligible for release to home confinement in November 2022. *See* Def.'s Mem., Doc. No. 111 at 9; *see also United States v. Clark,* 2021 U.S. Dist. LEXIS 51380, at *10 (S.D.N.Y. Mar. 18, 2021) ("[C]ourts have found that compassionate release for defendants who have served the significant majority, at least two-thirds, of their sentences does not undermine sentencing goals."). Cannon has additionally served much of that sentence under harsher or more restrictive conditions due to the ongoing Covid-19 pandemic, and necessary efforts to control the spread of the virus.

Furthermore, Cannon reports no disciplinary history during the time he has been incarcerated at Schuylkill, *see* Def.'s Mem. Doc. No. 111 at 11, suggesting that he has made strides toward rehabilitation. Cannon has also proposed a release plan that will likely reduce any risk of recidivism, providing that he intends to move away from Bridgeport (an environment that, according to Cannon, is not conducive to rehabilitation) and reside in Waterbury with his wife and stepson, and that his wife will be able to assist him in finding employment. *See id.* at 11-12.

Finally, with regard to the risk to public safety potentially posed by Cannon's release, I am persuaded that any such risks can be mitigated by imposing a term of home detention as a condition of supervised release.

In sum, given the length of the sentence that Cannon has already served, his family circumstances, his record of rehabilitation, his health conditions, and his increased risk of contracting Covid-19 while incarcerated, I am persuaded both that extraordinary and compelling reasons for release are present, and also that sentence modification would comport with the factors set forth in section 3553(a).

## IV.    Conclusion

For the foregoing reasons, Cannon's motion is **granted** and his custodial sentence is reduced to time served. Upon release, Cannon shall immediately commence his three-year term of supervised release, subject to all the conditions that were previously imposed, with the additional condition that Cannon will spend the first year of that term on home detention. Following release, Cannon shall contact the United States Probation Office as soon as possible, but in any event within 72 hours.

So ordered.

Dated at Bridgeport, Connecticut, this 21st day of July 2022.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge